## McAnulty v. Bingaman.

A deed not proved and recorded within the time required by the statute is not void, but binding between the parties and those having notice thereof.

In a proceeding under several judgments to try the right of the same property, there should be separate bonds and issues.

When damages were assessed for delay in a proceeding to try the right of property, and there was not sufficient evidence to show that the claim was fraudulently made, a new trial was awarded.

IN ERROR from the circuit court of the county of Pike.

This case came up on exceptions taken on a right of trial of property in four different suits.

The record showed a joint bond given by Bingaman and his securities to the present defendant in error, and Gasquet, Parish & Co., Wm. Bates, Silas McCatching, John Sappington, J. & A. Bearden, James E. Cunningham, James B. Quin, Peter Quin, in the penal sum of 500 dollars.

The bond recited nine *separate* and distinct judgments in favor of the several obligees; that in favor of the defendant in error was for six hundred and ninety-five dollars and twenty-five cents.— They were all against A. P. Cunningham, and the executions thereupon issuing were levied, each of them, on the slaves—Sinah, Eliza, Henry, Erwin, Anthony, Amanda, and Ann, as the property of Cunningham. This bond was given by Bingaman, after affidavit, to try the right of property. The issue tendered did not show for which one of the obligees in the bond it was tendered. It recited a judgment and execution, but did not state who was plaintiff nor who defendant in the judgment. The issue was tried and found against Bingaman, the claimant, and the value of the slaves was assessed as in detinue. The claim was also found to have been made for delay. The judgment of the court was, that the plaintiff recover of the claimant the slaves found in their ver-

McAnulty *v.* Bingaman.

dict, if to be had, to be sold in satisfaction of his judgment and costs, and if not to be had, then he recover the value of said slaves respectively assessed by the jury, or so much as will satisfy the said judgment and costs, and also the sum of one hundred and forty-three dollars and sixty-four cents, being ten per cent. damages on the amount of his judgment, and also his costs.

During the trial three bills of exceptions were taken. The first was, because the judge would not permit a witness to state what Cunningham had told him as to the ownership of the slaves.— The second was, because the judge would not permit a bill of sale from Cunningham, dated in 1836, (prior to the judgment,) to be read in evidence, on the ground that it had not been recorded; and also, because Cunningham's testimony to show that the bill of sale was made, executed, and delivered on the day it bore date. The third bill of exceptions was taken on the ground that after Cunningham was admitted to state under what circumstances the bill of sale had been given, he was not allowed to identify the bill of sale, or to show that it was executed, &c. on the day of its date.

A new trial was moved for and refused, and a bill of exceptions embodying the evidence taken. The testimony was as follows:— that Cunningham, at and before 1836, and down to the time of the levy, exercised acts of ownership over the slaves in controversy, but that he told witness they were not his property. Cunningham swore that in May, in 1836, he had signed a paper drawn by Frederic Staunton; he did not recollect what it was; he told Staunton to write any thing to secure Bingaman as his indorser on a note of four thousand dollars; he had confidence in Bingaman; the negroes in question were the same he gave Bingaman to secure him; he had publicly stated they were Bingaman's, and had once started to take them to Natchez for him; that he had kept them out of the way of the officers for Bingaman's benefit; that he had hired them of Bingaman's agent in 1840, but had not yet paid the hire; that two thousand dollars had been paid on the four thousand dollar note, for which Bingaman was his surety, and that he and Bingaman were sued for the balance; that Bingaman had paid nothing for him yet.

It was admitted that each case was for the same property, and that one should be decisive of all the others.

Montgomery and Boyd, for plaintiff in error.

1. The court erred in rendering any judgment, there being no plaintiff on the record.

2. The issue tendered does not follow the bond, which is the basis of the proceeding.

3. The judgment does not follow the bond.

4. The court erred in giving a judgment in favor of one obligee in the bond, for all the slaves levied on.

5. The court erred in giving the damages on the amount of the judgment, and not of the property levied on. Howard and Hutch. page 655.

6. The court erred in ruling out the testimony offered by the claimant, and in overruling the motion for a new trial.

Smiley, for defendant in error.

The first error assigned is, "the court erred in rendering any judgment, there being no plaintiff on the record."

It is true that in the case of McAnulty *v.* Bingaman, the *name* of McAnulty does not appear as plaintiff on the page of the record referred to in the assignment of errors, but the word "plff." does appear. The caption of the record is, Michael McAnulty *v.* A. L. Bingaman, claimant, and it sufficiently appears from other parts of the record that McAnulty was the plaintiff. The whole of the record must be viewed together, and that which is uncertain in one part, may be rendered clear by that which is certain in another part. 3 How. Rep. 430. The defect is cured by verdict, "the name being right in any part of the record or proceeding." How. & Hutch. page 591. The same defect does not appear in the three other cases.

The second assignment of error is founded on a mistaken construction of the law. The bond for the trial of the right of property is not the basis of the proceeding. The words of the law are: "It shall be the duty of the sheriff or other officer to return the bond with the execution to the clerk's office from which such execution issued, and the court shall thereupon direct an issue to be made up between the parties," &c. How. & Hutch. page 635, section 20.

The word "thereupon" evidently refers to the *time* of making

McAnulty *v.* Bingaman.

up the issue, and not that the issue shall be based upon the bond. Under the old law regulating trials of the right of property, of which the foregoing quotation is part of the 25th section, on a judgment against the claimant, and a failure to deliver the property to the sheriff, the bond had the force and effect of a judgment and execution issued against all the obligors of the bond; but this right of execution against all the obligors of the bond is expressly repealed, by the amendment of the law in 1830, and the law now is, that no execution shall issue on the bond given for the trial of the right of property.    How. & Hutch. 655, sec. 80.

The law of 1830, which is the law now in force, further declares, that "whenever a verdict shall be rendered in any such case, either on an issue joined, or on inquiry by default in favor of the plaintiff or plaintiffs, in such execution it shall be the duty of the court in which such verdict may be rendered, to pronounce such judgment as would be pronounced in an action of detinue for the specific property, if to be had, and if not, for its value as assessed by the jury, and execution shall issue accordingly," &c. How. & Hutch. 654, sec. 79.    The issue is not between the plaintiff in execution and the obligors of the bond.    The judgment is not against the obligors of the bond.    Execution does not issue against the obligors of the bond; and by express provisions of the statute, execution cannot issue *on the bond.*    How, then, can the bond be the basis of the proceeding?

The plaintiff in execution might object to the court directing an issue to be made up until a bond was filed, but the bond is in no wise a part of the case.    It is at best but collateral security to the plaintiff in execution.    On the insolvency of the defeated claimant, and failure to deliver the property to the sheriff, if the bond has any effect, it can only be made available to the plaintiffs in execution by commencing a distinct action on the bond, and establishing, by due course of law, the liabilities of the securities.

It is deemed a sufficient answer to the fourth assignment of error to say, that each execution was levied on *all the slaves;* that the plaintiff in each execution had a legal right to the sale of all the slaves, in order to satisfy his execution, and without a sale it could not be ascertained how many it would require to be sold to satisfy

33*

McAnulty *v.* Bingaman.

such execution, and that the plaintiff in each execution was delayed of justice by the interposition of Bingaman's claim. If, then, injustice may seem to have been done in this particular case, it is attributable to the action of Bingaman himself, and the form of the statute, and not to the judgment of the court. And even this seeming injustice might be easily remedied, by delivering up the slaves to the sheriff in satisfaction of all the judgments. Error in the bond only operates injuriously to the plaintiffs in execution, and not to the claimant, and he will not be permitted to object to that which does not injure *him*.

As to the fifth assignment of error, it might be well taken by the defendant in error, but comes with little plausibility from the defeated claimant.

The plaintiffs in execution were, by the statute, entitled to ten per centum damages on the assessed value of the property, instead of on the amount of their respective judgments. A plaintiff in error should show errors to his prejudice. 5 Howard, 410. If the error is *deemed serious by the plaintiff in error*, it can be remedied without a new trial, as the facts all appear on the record, and this court can render such judgment as the court below should have rendered.

The bill of sale attempted to be introduced as testimony on the part of Bingaman was made in 1836, and not recorded until 1840, after the plaintiffs in execution had recovered their judgments. The slaves in controversy were in the possession of Cunningham before 1836, and up to the time of the levy of the executions. It is a general rule that title to personal property passes by delivery, and follows possession. This case, it is conceived, comes clearly within the statute of frauds. H. & H. 370.

The defendants in error recovered their judgments against Cunningham at the September term, 1839, of the Pike circuit court, being more than a year before Bingaman offered his supposed title for record in Pike county. The admission of said bill of sale to the jury could not have changed their verdict, but, in connexion with the other testimony, would go far in the minds of an intelligent jury to show that the claim was set up fraudulently, or for purposes of delay.

The testimony of A. P. Cunningham, the defendant in execu-

McAnulty *v.* Bingaman.

tion, introduced by claimant, establishes the fact that no consideration passed for said slaves; that said bill of sale was intended to be in the nature of a trust, to secure Bingaman against an indorsement for which "he has not paid a cent."

Said supposed title not having been offered for record in the proper county for more than four years after its execution, and more than one year after the rendition of judgment in favor of defendant in error, and said slaves having been in the uninterrupted possession of Cunningham for four or five years before the levy of the executions, and he having exercised ownership over them during that whole time, the court certainly did right to reject the bill of sale as insufficient to prove any thing material for the claimant. Such titles certainly cannot defeat the rights of creditors.

If, then, it appears from the record that the plaintiffs in execution must always recover, this court will refuse a new trial, and refuse to disturb the judgment of the court below. 5 H. 495.

Mr. Justice TURNER delivered the opinion of the court.

These four cases come up on writs of error from the circuit court of Pike county, and, by the written agreement of counsel, it is admitted, that each of them is for the same property, that the issue and record of each case is precisely the same, and they agreed to argue one case only, and that the decision of one should decide the rest.

The record shows that the writs of error are sued out to reverse judgments rendered against Bingaman, the claimant of property, levied on by the sheriff of Pike, as the property of A. P. Cunningham.

The proceedings were very irregular. The record commences with a bond executed by Bingaman and his securities, payable to Michael McAnulty, guardian of the minor heirs of James Leggett, deceased, and thirteen others, in the penal sum of five thousand dollars, with condition, reciting fourteen several executions of those several obligees, against A. P. Cunningham, the levy on sundry slaves, the claim of Bingaman, &c. and the affidavit of Bingaman claiming the slaves, &c.

Then follows this entry, viz: "The plaintiff by his attorney tendered an issue for the trial of the right of property to said negroes,

which reads thus: "whereas the plaintiff in this case recovered judgment at the September term, 1839, for the sum of six hundred and ninety-five dollars and twenty-five cents, and cost of suit, taxed at twenty-six dollars and eighty-seven and a half cents, on which judgment execution issued 12th May, 1840, and levied by the sheriff of Pike county, on the following negro property, belonging to A. P. Cunningham, one of the defendants in execution, to wit, (naming the slaves and their ages,) the sale of which was delayed by A. L. Bingaman giving bond and security for the trial of the right of property, which bond was returned with said execution, September 25th, 1840, and the plaintiff in execution gives the court to understand that the property above levied on was at the time the property of the defendant A. P. Cunningham, and subject and liable to said execution, all of which he is ready to verify; wherefore, &c. (signed) Stone, for plaintiff in ex."

. And the said Bingaman, by his attorneys, joined issue, in these words, to wit: "and the said defendant, A. L. Bingaman, the claimant of the negroes levied on by the sheriff of Pike county, in the before recited execution, by his attorney, comes and defends the wrong and injury when, &c. and says that the negroes levied on by the said sheriff to satisfy the before recited execution, were not, at the time of the said levy, the property of the said defendant Cunningham, and are not subject and liable to said execution, and of this he puts himself upon the country, &c. (signed) O. J. G. Stewart, attorney for defendant A. L. Bingaman, joined by consent. Stone, attorney, O. J. G. Stewart, attorney for A. L. Bingaman."

The record then sets out a jury trial, and verdict in favor of the plaintiff, setting forth the name and value of each slave, and that the claim was *made for purposes of delay.*

Then followed a judgment, that the plaintiff recover of the claimant the slaves, or their value, and judgment for one hundred and forty-three dollars and sixty-four cents damages, "being ten per cent. damages on the amount of his said judgment and costs."

A motion was made for a new trial, and overruled. Several bills of exceptions are embodied in the record.

Several questions arise from this record for the consideration of the court.

McAnulty *v.* Bingaman.

In the first place, Bingaman offered a bill of sale of the slaves in question, and proof of its execution. It was objected to, and the objection sustained, on the ground that it was not probated and recorded within the time prescribed by the statute, but afterwards. In this we think the court erred, inasmuch as a deed is not a nullity or absolutely void, which is not proved and recorded according to law, but is binding between the parties and those having notice thereof. The deed should have been admitted, as a link in the chain of evidence, and the court could have instructed the jury as to its legal effect, after the evidence was gone through with.

For this error alone the judgment should be reversed.

The entire proceedings are irregular, from the bond given by Bingaman to try the right of property, to the judgment. There should have been a separate bond for each case, and a separate issue; and each issue should contain the proper parties, and the judgment should follow the issue. We do not think that there is that *certainty* in the record, which is essential in every case, to warrant a final recovery by the judgment of a court of record.

The act of 1830, How. & Hut. 653-4, gives to such an issue and trial the same dignity and effect, as belongs to the action of detinue.

There is no order of court directing the issue. This however might be inferred; but it is certainly better to insert it. I consider, too, that a new trial should be granted, as the evidence was insufficient to show that the claim was made for purposes of delay, when it evidently appeared that it was made in good faith, although it may not be sustainable in point of law. That will depend on the evidence when fairly and fully submitted to another jury, under a proper issue to be made up, in each of these cases.

In these several cases, four in number, the judgments must be reversed, and causes remanded for further proceedings in the court below.